**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**MARK C. KANE,**

    **Plaintiff,**

                                    **CASE NO.:**

vs.

**ELI LILLY AND COMPANY, a Foreign
Profit Corporation,**

    **Defendant.**
_____/

**COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff MARK C. KANE ("Plaintiff"), through undersigned counsel, files this Complaint against Defendant ELI LILLY AND COMPANY, a Foreign Profit Corporation ("Defendant"), and states as follows:

**INTRODUCTION**

1. Plaintiff brings this action pursuant to the Family and Medical Leave Act, as amended, 29 U.S.C. § 2601, et seq. ("the FMLA") to recover from Defendant for back pay, an equal amount as liquidated damages, other monetary damages, equitable relief, declaratory relief, and reasonable attorneys' fees and costs.

2. Plaintiff also brings these claims for age discrimination against Defendant for its unlawful termination of Plaintiff, in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626 *et seq.* ("ADEA") and the Florida Civil Rights Act, Fla. Stat. § 760.01 *et seq* ("FCRA"). Plaintiff is seeking damages including back pay, front pay, liquidated damages, punitive damages, reinstatement, lost benefits, compensatory damages, emotional distress damages, pain and suffering, injunctive relief, reasonable attorneys' fees and costs and

any other relief to which the Plaintiff is entitled including, but not limited to, equitable relief.

3. Plaintiff brings a claim for discrimination and retaliation against Defendant, who subjected Plaintiff to workplace discrimination and retaliation because of his age and his attempt to exercise his rights under the FMLA.

4. Plaintiff was wrongfully terminated as the culmination of discrimination and retaliation against him.

## JURISDICTION

5. The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1337 and the FMLA and the authority to grant declaratory relief under the FMLA, and pursuant to 28 U.S.C. § 2201 et seq.

6. Jurisdiction of this matter arises under 28 U.S.C. §1331 with federal questions involving the ADEA. An express grant of federal court jurisdiction over this federal claims is found in the ADEA 29 U.S.C. §626. Jurisdiction over state law claims also arise under the Court's supplemental jurisdiction 28 U.S.C. § 1367.

7. This Court has jurisdiction over Plaintiff's claims because, at all times material to this Complaint, Plaintiff worked for Defendant in Hillsborough County, Florida.

8. Plaintiff is protected by Family and Medical Leave Act, as amended, 29 U.S.C. § 2601, et seq.

9. Plaintiff is protected by the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626 *et seq*.

10. Plaintiff is protected by the Florida Civil Rights Act, as amended, Fla. Stat. § 760.01 *et seq*.

11. Plaintiff timely filed his Charge of Discrimination with the U.S. Equal Employment

2

Opportunity Commission ("EEOC"), alleging age discrimination and retaliation.

12. Plaintiff received his Notice of right to sue on Charge No. 470-2019-03456 dated July 31, 2019.

13. Plaintiff filed this Complaint within 90 days of receiving his Notice of right to sue.

14. Plaintiff's claims are therefore timely filed.

## PARTIES

15. Plaintiff worked for Defendant as a pharmaceutical sales representative from on or about September 2003, until his termination on or about September 25, 2018.

16. At all times material to this action, Defendant, was and continues to be a Foreign For-Profit Corporation.

17. Further, at all times material to this action, Defendant was, and continues to be, engaged in business in Florida, doing business in, among other counties, in Hillsborough County, Florida.

18. Throughout his employment with Defendant, Plaintiff primarily worked in Defendant's territory located in and around Hillsborough County, Florida.

19. At all times material to this action, Plaintiff was an "employee" of Defendant within the meaning of the FCRA, FMLA and ADEA.

20. At all times material to this action, Defendant was, and continues to be, "employer" within the meaning of the FCRA, FMLA and ADEA.

21. Defendant is an employer under the FMLA because it was engaged in commerce or in an industry affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

22. At all times relevant hereto, Plaintiff worked in the Tampa area where Defendant employed 50 or more employees within 75 miles.

23. At all times relevant hereto, Plaintiff was an employee entitled to leave under the FMLA, based on the fact that he was employed by the employer for at least 12 months and worked at least 1,250 hours during the relevant 12-month period prior to him seeking to exercise his rights to FMLA leave.

24. Defendant is also an employer as defined by ADEA, as it employed over 15 employees for over twenty calendar weeks in each year relevant to this action.

25. Defendant is also an employer as defined by the FCRA, as it employed over 15 employees for over twenty calendar weeks in each year relevant to this action.

## GENERAL ALLEGATIONS

26. Plaintiff was hired by Defendant as a Sales Representative on or about September 2003.

27. Defendant claims that it is a worldwide leader in cutting-edge pharmaceutical drugs.

28. While employed by Defendant Plaintiff developed relationships with customer accounts, managed territories, and generated sales by visiting, meeting and calling physicians in his area to educate them regarding Defendant's products and provide such physicians with samples.

29. Throughout Plaintiff's employment, Plaintiff kept, to the best of his knowledge, accurate records reflecting which physicians he called, visited, met with, and/or provided pharmaceutical samples to and reported same to Defendant for Defendant's physician call/visit log records.

30. Throughout Plaintiff's fifteen years of employment with Defendant, Defendant had never investigated, confirmed or looked into Plaintiff's call/visit log records or ever counseled Plaintiff for not keeping perfectly accurate call/visit log records.

31. In January of 2017, Defendant hired a new Chief Executive Officer ("CEO"), David Ricks.

32. Immediately upon his arrival, Mr. Ricks began to publicly stress the fact that he wanted to increase the percentage of "millennial sales representatives to 40% of the overall sales force by 2020."

33. Upon information and belief, shortly after Mr. Ricks' public statements, Defendant began engaging in a pattern and/or practice of refusing to interview or hire sales representatives who were over the age of 40, gave preferential hiring/interview status only to new graduates out of college and created a group called "ECP" which stands for Early Career Professionals to cater to and support younger sales representatives.

34. No such professional groups or support groups were ever offered to sales representatives who were older, more senior or had many years of service with Defendant.

35. In addition, in the months and years following Mr. Ricks' initial announcement of Defendant's plan to increase the percentage of millennial sales representatives, multiple members of Defendant's leadership team would routinely boast to all of Defendant's sales representatives on company-wide "town hall meeting" conference calls about the fact that Defendant was successful in rapidly increasing the percentage of "millennial sales representatives."

36. Indeed, one of the sales representative managers in Florida stated during one of the company-wide town hall conference calls "let's face it guys we're just too old."

37. While working for Defendant, Plaintiff became entitled to certain pension and retirement benefits due to his long-tenure of employment with Defendant.

38. Upon information and belief, Defendant began to systematically terminate older, longer-tenured employees to prevent such older sales representatives, like Plaintiff, from vesting or further vesting in his pension and retirement benefits.

39. Prior to his termination, Plaintiff's had exemplary sales performance over his roughly fifteen years of employment with sales figures typically at or near the top of his team. Furthermore, Plaintiff had never been disciplined or counseled for anything related to his call/visit log prior to his termination. Accordingly, Plaintiff was qualified for the position he held and in fact, he excelled as an employee for Defendant.

40. On or about September 21, 2018, Plaintiff was unexpectedly contacted via conference call by Kia Richmond from Defendant's Human Resources department and his District Sales Manager, Javier Hernandez.

41. During the call, Ms. Richmond and Mr. Hernandez, began accusing falsely accusing Plaintiff, for the first time, of incorrectly and/or falsifying his call logs to physicians by reporting calls or visits which were never made.

42. Plaintiff asked if they were conducting checks on the call logs for other sales representatives and Ms. Richmond explicitly stated that they were just looking into his call logs.

43. This struck Plaintiff as being odd as he had never had any issues with his call logs or reporting in fifteen years of his employment.

44. Ms. Richmond and Mr. Hernandez brought up three alleged calls or visits which were allegedly falsified or entered incorrectly by Plaintiff.

45. On the first alleged falsified and/or incorrectly logged call which Ms. Richmond and Mr. Hernandez brought up, Plaintiff reminded Mr. Hernandez that he was physically present when that call to a physician occurred because he was with Mr. Hernandez that day.

46. Mr. Hernandez recalled same and this alleged incident was swept under the rug so that the proverbial "witch hunt" against Plaintiff could continue.

47. At this point, it was clear to Plaintiff that Defendant was not going to stop until some type of justification for his termination could be found by Defendant.

48. Accordingly, Ms. Richmond and Mr. Hernandez brought up two additional alleged incorrectly logged calls/visits.

49. On one visit, Mr. Hernandez explained that he went to one of Plaintiff's physician client's offices where he logged a visit with Dr. Valente, Dr. Castello and others at the practice. Mr. Hernandez then proceeded to falsely accuse Plaintiff of never visiting the practice because he had not signed the "sign-in sheet" at the front of the office and the front office staff stated they didn't recognize him from a photo Mr. Hernandez showed to him.

50. Plaintiff explained that he had been going to this practice for years and knows all of the physicians closely, Plaintiff never has to sign-in and just walks right into the back to wait for the physicians to speak with him.

51. Notably, Mr. Hernandez admitted he did not ask any of the physicians in the practice whether Plaintiff frequently visited them or whether he visited them on that day. Instead, he simply asked the transient staff members at front-desk of a busy medical practice with approximately seven or eight physicians operating out of whether they may have seen Plaintiff.

52. Regardless, for the final incident, Plaintiff again provided a reasonable explanation for the alleged "discrepancy" Ms. Richmond and Mr. Hernandez asked him about by stating that he could not recall the exact circumstances of this incident, but that if there was any mistake on his part in this incident or in any of the other incidents that were brought up, then it was surely not intentional or malicious on his part, but could only be human error.

53. Throughout his employment, it was the standard practice of Plaintiff and countless other sales representatives to have to fill out their physician call/visit logs several days or even a week or so after such calls or visits occurred. This was a regular occurrence because sales representatives are typically traveling on tight schedules and rarely have enough time to fill out call/visit logs contemporaneously.

54. Throughout his employment, this practice was accepted by Defendant and Plaintiff's management team. As a result of this accepted practice, it was routine and well known by Defendant that sales representatives might log a call or visit with a physician on one day when they really called or visited such physician one or two days prior or after their log stated.

55. Prior to Plaintiff's termination, Plaintiff noticed that Defendant was also investigating and unexpectedly terminating other older sales representatives for this same alleged violation without warning, but younger sales representatives were being spared from such investigations and inquires by Defendant.

56. Thereafter, Ms. Richmond and Mr. Hernandez thanked Plaintiff for his time and told them they would be back in touch with him in the near future.

57. Two to three weeks prior to the above-mentioned call on September 21, 2018, Plaintiff injured his back and was seeing a chiropractor regarding same.

58. After the above noted call on September 21, 2018, Plaintiff's back condition worsened and became debilitating to Plaintiff over the weekend.

59. Accordingly, on September 24, 2018, Plaintiff submitted a request for FMLA leave so that he could seek appropriate treatment for his back and obtain the rest it needed to recover since his position frequently required him to sit and drive for long hours in his car from medical practice to medical practice.

60. On the following day, prior to anyone contacting Plaintiff regarding his request for FMLA leave and/or to further discuss the false allegations which were brought up against him on September 21, 2018, Plaintiff's employment was abruptly terminated. Shortly after Plaintiff's termination he was replaced by a younger sales representative in the Tampa territory.

61. Upon information and belief, other similarly-situated younger sales representatives did not also have their physician call/visit logs investigated by Defendant, nor were they terminated after they either reported such violations to Defendant or after stating that such violations were as a result of human error and were not malicious. This is especially true if the younger sales representative did not have a disciplinary history similar to Plaintiff.

## COUNT I – RETALIATION UNDER THE FMLA

62. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1–61 above.

63. Plaintiff was, at all times relevant, eligible for FMLA-covered leave.

64. Defendant was Plaintiff's employer as defined by the FMLA.

65. Defendant discriminated and/or retaliated against Plaintiff because he exercised his rights under the FMLA. Specifically, Plaintiff applied for FMLA leave and was terminate

one day later.

66. Defendant had actual or constructive knowledge of the discriminatory/retaliatory conduct of Plaintiff's supervisors.

67. Defendant's acts and omissions negatively affected one or more terms, conditions and/or privileges of Plaintiff's employment.

68. Defendant's discriminatory/retaliatory acts and omissions occurred, at least in part, because of Plaintiff's request for FMLA-covered leave.

69. Defendant's conduct violated Plaintiff's right to be free from discrimination/retaliation as guaranteed by the FMLA.

70. As a direct, natural, proximate and foreseeable result of the actions of Defendant, Plaintiff has suffered injuries for which he is entitled to compensation, including, but not limited to lost wages and benefits, liquidated damages, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

71. Plaintiff has no plain, adequate or complete remedy at law for the actions of Defendant, which have caused and continue to cause irreparable harm.

72. Defendant's violations of the FMLA were willful.

73. Plaintiff has retained the law firm of MORGAN & MORGAN, P.A. to represent Plaintiff in the litigation and has agreed to pay the firm a reasonable fee for its services.

74. Plaintiff is entitled to recover his attorneys' fees and costs pursuant to 42 U.S.C. § 2617(a)(3).

WHEREFORE Plaintiff, MARK C. KANE, demands judgment against Defendant for back pay, front pay, an equal amount as liquidated damages, other monetary damages, equitable

relief, declaratory relief, and reasonable attorneys' fees and costs, and any and all further relief that this Court determines to be just and appropriate.

## COUNT II – INTERFERENCE UNDER THE FMLA

75. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1–61 above.

76. Plaintiff worked for Defendant for more than one year and was eligible for FMLA leave.

77. Plaintiff had worked over 1250 hours for Defendant within the last year before his FMLA leave.

78. Defendant interfered with Plaintiff's FMLA rights by terminating his employment prior to Plaintiff being able to exercise his FMLA rights in violation of the FMLA.

79. Defendant knew that Plaintiff needed FMLA leave pursuant to 29 U.S.C. § 2612(a)(1)(A).

80. Defendant has denied exercise of an employee's FMLA rights to Plaintiff, i.e. to take qualified leave and to return to his job with the same terms and conditions.

81. As a result of Defendant's intentional, willful and unlawful acts by interfering with Plaintiff's rights pursuant to the FMLA, Plaintiff has suffered damages and incurred reasonable attorneys' fees and costs.

82. Because Defendant cannot show that its violation of the FMLA was in good faith Plaintiff is entitled to liquidated damages.

83. Plaintiff has retained the law firm of MORGAN & MORGAN, P.A. to represent Plaintiff in the litigation and has agreed to pay the firm a reasonable fee for its services.

84. Plaintiff is entitled to recover his attorneys' fees and costs pursuant to 42 U.S.C. §

2617(a)(3).

WHEREFORE Plaintiff, MARK C. KANE, demands judgment against Defendant for back pay, front pay, an equal amount as liquidated damages, other monetary damages, equitable relief, declaratory relief, and reasonable attorneys' fees and costs, and any and all further relief that this Court determines to be just and appropriate.

**COUNT III – DISCRIMINATION BASED ON AGE IN VIOLATION OF THE ADEA**

85. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1–61 above.

86. Plaintiff is a member of a protected class because Plaintiff is over forty years old.

87. At all relevant times throughout his employment, Plaintiff was qualified for the position he held with Defendant.

88. After Plaintiff's termination, Plaintiff was replaced by a younger employee.

89. Defendant's acts were intentional, with malice, and in violation of Plaintiff's protected civil rights under the ADEA.

90. Plaintiff has been damaged and continues to be damaged by Defendant's illegal conduct and discriminatory actions based on his age.

91. The above discrimination was done by Defendant with a reckless disregard for Plaintiff's rights under federal and state laws.  As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense and loss of enjoyment of life.

WHEREFORE Plaintiff, MARK C. KANE, demands judgment against Defendant for back pay, an equal amount as liquidated damages, front pay, other monetary damages such as

loss of pension and retirement benefits, equitable relief, declaratory relief, and reasonable attorneys' fees and costs, and any and all further relief that this Court determines to be just and appropriate.

## COUNT IV – DISCRIMINATION BASED ON AGE IN VIOLATION OF THE FCRA

92. Plaintiff re-alleges and adopts paragraph 1 – 31 as though set forth fully herein.

93. Plaintiff is a member of protected class because he is over forty years of age.

94. At all relevant times, Plaintiff was qualified for the position he held with Defendant.

95. After Plaintiff's termination, Plaintiff was replaced by a younger employee.

96. Defendant's acts were intentional, with malice, and in violation of Plaintiff's protected civil rights under the FCRA.

97. Plaintiff has been damaged and continues to be damaged by Defendant's illegal conduct and discriminatory actions based on his age.

98. The above discrimination was done by Defendant with a reckless disregard for Plaintiff's rights under federal and state laws. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, great expense and loss of enjoyment of life.

WHEREFORE Plaintiff, MARK C. KANE, demands judgment against Defendant for back pay, front pay, compensatory damages, punitive damages and other monetary damages such as loss of pension and retirement benefits, equitable relief, declaratory relief, and reasonable attorneys' fees and costs, and any and all further relief that this Court determines to be just and

appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury.

Dated: October 29, 2019.

                                        Respectfully submitted by,

                                        **/s/ Gregory R. Schmitz**
                                        GREGORY R. SCHMITZ, ESQ.
                                        Florida Bar No.:  0094694
                                        20 North Orange Avenue, 15th Floor
                                        Orlando, Florida 32801
                                        Telephone:  (407) 204-2170
                                        Facsimile:   (407) 245-3401
                                        E-mail: gschmitz@forthepeople.com
                                                          mbarreiro@forthepeople.com
                                        ***Attorney for Plaintiff***